STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION v. DOWNES
2022 OK 65
Case Number: SCBD-7128
Decided: 06/21/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 65, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. Oklahoma Bar Association, Complainant,
v.
SEAN PATRICK DOWNES, Respondent.
BAR DISCIPLINE PROCEEDING
¶0 The complainant, Oklahoma Bar Association, charged the respondent, Sean Patrick Downes, with three counts of professional misconduct associated with the attorney's alleged conduct concerning conversion of client funds, lack of communication, and dilatory conduct. The trial panel recommended disbarment, and that costs be imposed. Upon de novo review, we hold that the respondent's conduct warrants disbarment and the payment of costs.
ATTORNEY DISBARRED;
COSTS IMPOSED.
Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Sheila J. Naifeh, Oklahoma City, Oklahoma, for Respondent.
KAUGER, J.:
¶1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Sean Patrick Downes, (respondent/attorney/Downes) with three counts of professional misconduct. The Bar Association alleged that the respondent's actions involved: conversion of client funds, unfairness, lack of communication with clients and the Bar Association, lack of diligence, and lack of adequate advisement to clients.
¶2 The Bar Association argues that this conduct was in violation of Rules 1.1 [Competence], 1.3[Diligence], 1.4 [Communication], 1.8(a) [Conflict of Interest/Business Transactions], 1.15 [Safekeeping of Property], 3.2 [Expediting Litigation], and 8.4 (a) [Misconduct] of the Oklahoma Rules of Professional Conduct, and Rule 1.3 [Discipline for Acts Contrary to Prescribed Standards of Conduct], and 5.2 [Investigations], of the Rules Governing Disciplinary Proceedings.
¶3 After an evidentiary hearing the trial panel recommended disbarment. The recommendation was enhanced because the respondent had previously been suspended from the practice of law for one year in State ex. rel. Okla. Bar Ass'n v. Downes, , . It also recommended the payment of the costs of these proceedings. Upon a de novo review, we hold that the respondent's conduct warrants disbarment and the imposition of costs in the amount of $4,357.54 to be paid within 90 days of the date of this opinion.
STANDARD OF REVIEW
¶4 In disciplinary matters, this Court possesses exclusive original jurisdiction. To keep the investigatory and adjudicatory functions separate in bar disciplinary proceedings, this Court has assigned limited duties to the Oklahoma Bar Association, and the Professional Responsibility Tribunal (PRT). In performing their roles, the Bar and PRT act as an aid to the Court, but do not act on behalf of the Court. We are not bound by agreed findings, conclusions of law or recommendations for discipline. Rather, the ultimate responsibility for imposition of professional discipline is solely within the purview of this Court.
¶5 In considering the record before us, as well as the recommendations of the Professional Responsibility Tribunal, our standard of review is de novo. Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence. The function of disciplinary proceedings is not punishment. The purpose of discipline is to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession. 
FACTS AND ALLEGED MISCONDUCT
¶6 The respondent was admitted to the practice of law in Oklahoma in 1997. He is a solo practitioner in Sapulpa, Oklahoma. In 2005, the Court suspended the respondent for one year from the practice of law for:
1) having a sexual relationship with a client during a divorce representation; 2) sending a threatening letter to the husband's divorce counsel; 3) threatening counsel with litigation for filing a grievance against him; 4) commingling and converting a client's retainer; and
5) failing to respond to the Bar regarding a grievance. 
¶7 Although it is not clear precisely how many, the record reflects that the respondent has had other informal complaints previously filed which resulted in diversionary classes relating to client neglect, communication, and law office management, along with at least two letters of admonition. On May 24, 2022, the Court suspended the respondent for noncompliance with mandatory continuing legal education requirements for the year 2021. 
COUNT 1 OF MISCONDUCT: THE SHILES/ROBERTSON GRIEVANCE
¶8 The first grievance concerns loan and business transactions with a client. In November of 2008, the respondent borrowed $130,000.00 from his client, Ken Robertson, for the purchase and remodeling of an office building in Sapulpa. The respondent did not make timely payments on the loan. On March 5, 2009, the respondent received a settlement check on Robertson's behalf from the sale of land in Texas, deposited the check in his IOLTA account, and without the client's knowledge, "borrowed" another $80,000.00 from the settlement funds.
¶9 Subsequently, the respondent confessed to the client that he had taken the funds, and in November of 2009, the respondent executed a new loan agreement for $95,000.00 to memorialize the promise to repay the funds taken without permission. The combined amount of funds which the respondent owed the client was now $205,726.96. The respondent again failed to make the required, regular payments.
¶10 The client hired attorney, Jerry Shiles, in an attempt to collect on the funds the respondent owed him. The attempt to collect culminated in a grievance filed on Robertson's behalf in January of 2019, and the client died on February 8, 2020. As of the filing of the complaint on September 21, 2021, the balance due to Robertson was approximately $103,720.88. The evidence and admissions at trial reflects that the respondent converted client funds for his own use, and engaged in multiple business transactions with a client wherein he had a conflict of interest. He also failed to take proper steps to ensure fairness for the client.
COUNT II OF MISCONDUCT: THE LANHAM GRIEVANCE
¶11 David Lanham hired the respondent on September 15, 2018, to expunge a criminal record from thirty years ago. Apparently the respondent filed a motion for expungement on October 9, 2018, but nothing further occurred on the matter. Lanham filed a grievance on April 22, 2019, and alleged that the respondent stopped all communication with him and never completed the expungement.
¶12 The respondent denied the allegations. He also took over two years to provide any supporting documentation to the Bar regarding information concerning the filing of the expungement, and Lanaham's payment of $800.00 for an expungement that never happened. At trial, the primary focus of this grievance was the respondent's failure to cooperate in resolving the matter.
COUNT III: THE GILMORE GRIEVANCE
¶13 Ronald Gilmore hired the respondent in May of 2012 to file a probate after Gilmore's daughter and son-in-law were killed in a car crash. The decedents left behind Gilmore's five-year-old granddaughter. Respondent filed the probate in Payne County on April 3, 2012, but, according to Gilmore, the respondent failed to timely resolve the matter, and failed to communicate with him thereafter. The respondent admitted that the case took too long, but blamed part of the delay on strategy of allowing a foreclosure of the decedent's real property first to protect the assets of the estate. After years of unexplained and unreasonable delay, Gilmore fired the respondent in July of 2019, and hired another lawyer. The matter was then resolved in about a year. 
DISCIPLINE IMPOSED
¶14 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct. Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors. Discipline should be sufficient to persuade the attorney that such conduct will not be tolerated. Mitigating circumstances may be considered in evaluating both the attorney's conduct and assessing the appropriate discipline.
¶15 This Court is the sole arbiter of bar discipline. We are free to attribute as much weight to the trial panel's recommendations as we see fit. However, under the facts presented, given the respondent's misconduct, his prior disciplinary history, and the discipline administered in similar cases, we agree with the PRT that the respondent's conduct warrants disbarment, and the payment of $4,357.54 in costs to be paid within 90 days of the date of this opinion. 
CONCLUSION
¶16 The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession. The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners is solely vested in this Court.
¶17 It is our difficult duty to withdraw the license to practice law if necessary to protect the interest of the public, the legal profession and this tribunal. Upon a de novo review of the record, we determine that the clear and convincing evidence warrants the respondent's disbarment, and the payment of $4,357.54 in costs to be paid within 90 days of the date of this opinion. 
ATTORNEY DISBARRED;
COSTS IMPOSED.
ALL JUSTICES CONCUR 
FOOTNOTES
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 1.1 provides:
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 1.3 provides:
A lawyer shall act with reasonable diligence and promptness in representing a client.
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 1.4 provides:
(a) A lawyer shall: 
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 1.8(a) provides:
a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 1.15 provides in pertinent part:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. 
(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose. 
(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred. 
(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property. 
(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed. 
(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien. 
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 3.2 provides:
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.
 Title 5 O.S. 2011 Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 8.4(a) provides in pertinent part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 Title 5 O.S. 2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 1.3 provides:
The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.
 Title 5 O.S. 2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 5.2 provides:
After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.
 State ex rel. Oklahoma Bar Ass'n v. Phillips, , ¶2, ; State ex rel. Oklahoma Bar Ass'n v. Erickson, , ¶14, ; State ex rel. Oklahoma Bar Ass'n v. Israel, , ¶13, ; State ex rel. Oklahoma Bar Ass'n v. Smolen, , ¶7, .
 Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch.1, App. 1--A; State ex rel. Oklahoma Bar Ass'n v. Holden, , ¶1, ; State ex rel. Oklahoma Bar Ass'n v. McMillian, , ¶5, .
 State ex rel. Oklahoma Bar Ass'n v. Downes, , ¶25, ; Tweedy v. Oklahoma Bar Ass'n, , ¶22, . Title 5 O.S. 2011, Ch. 1, App., art. 1, §1 provides:
The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions.
 See, State ex rel Oklahoma Bar Ass'n v. Downes, see note 12, supra; In Tweedy v. Oklahoma Bar Ass'n, see note 12, supra, we said:
In contrast to the principles which affect administrative agencies, due process is offended when a judicial institution functions both as an organ of enforcement and adjudication. Concentrating the powers of judge and prosecutor in the same person or body poses an unreasonably high risk of compromising the protected and cherished value of judicial detachment and neutrality.
 State ex rel. Oklahoma Bar Ass'n v. Erickson, see note 10, supra; State ex rel. Oklahoma Bar Ass'n v. Israel, see note 10, supra.
 State ex rel. Oklahoma Bar Ass'n v. Israel, see note 11, supra; State ex rel. Oklahoma Bar Ass'n v. Bolusky, , ¶14, ; State ex rel. Oklahoma Bar Ass'n v. Dershem, , ¶12, .
 State ex rel. Oklahoma Bar Association v. Farrant, , ¶7, ; State ex rel. Oklahoma Bar Association v. Gasaway, , ¶9, ; State ex rel. Oklahoma Bar Association v. Braswell, , ¶9, .
 Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1 App. 1-A; State ex rel. Oklahoma Bar Ass'n v. Wolfe, , ¶11, ; State ex rel. Oklahoma Bar Ass'n v. Meek, , ¶0, ; State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra.
 State ex rel. Oklahoma Bar Association v. Meek, see note 17, supra; State ex rel. Oklahoma Bar Association v. Bolton, , ¶15, ; State ex rel. Oklahoma Bar Association v. Donnelly, , ¶14, ; State ex rel. Oklahoma Bar Association v. Colston, , ¶20, .
 State ex rel. Oklahoma Bar Ass'n v. Patterson, , ¶29, ; State ex rel. Oklahoma Bar Ass'n v. Eakin, , ¶0, ; State ex rel. Oklahoma Bar Ass'n v. Bolton, see note 18, supra at ¶16.
 State ex rel. Oklahoma Bar Ass'n v. Doris, , ¶38, ; State ex rel. Oklahoma Bar Ass'n v. Rozin, , ¶10, .
 State ex rel. Oklahoma Bar Ass'n v. Miskovsky, , ¶15, .
 State ex rel. Oklahoma Bar Ass'n v. Southern, , ¶35, ; State ex rel. Oklahoma Bar Ass'n v. Taylor, , ¶33, .
 State ex rel. Oklahoma Bar Ass'n v. Rennie, , ¶20, ; State ex rel. Oklahoma Bar Ass'n v. Butler, , ¶9, .
 State ex rel. Oklahoma Bar Ass'n v. Rennie, see note 23, supra; State ex rel. Oklahoma Bar Ass'n v. Wilkins, , ¶12, .
 The respondent relies on cases such as: State ex rel. Oklahoma Bar Ass'n v. Taylor, , (Public censure for one count of misconduct relating to failure to supervise staff and improper endorsement of checks.); State ex rel. Oklahoma Bar Ass'n v. Gasaway, , (One year suspension for commingling and misuse of funds.); State ex rel. Oklahoma Bar Ass'n v. Brown, , (Six month suspension for dishonesty in endorsing check, and notification of client of funds.); State ex rel. Oklahoma Bar Ass'n v. Geb, , (One year suspension for commingling and failure to properly remit funds to client.). However, we find the respondent's misconduct more akin to cases which resulted in ranges of discipline from disbarment to two years and a day such as: State ex rel. Oklahoma Bar Ass'n v. Scott, , (Failure to provide account for use of funds, and neglect.); State ex rel. Oklahoma Bar Ass'n v. Nichols, , (Two year suspension for unauthorized practice of law during suspension and failure to withdraw.); State ex rel. Oklahoma Bar Ass'n v. Watkins, , (Two years and a day for conversion, misappropriation, neglect, and failure to communicate.); State ex rel. Oklahoma Bar Ass'n v. Parker, , (Two years and one day for neglect of client matters, failure to keep clients informed, failure to respond to grievances, and refusal to return files or unearned fees.); State ex rel. Oklahoma Bar Ass'n v. Passmore, , (Two years and a day for six counts of misconduct relating to failure to respond, neglect, failure to keep client informed, failure to communicate, failure to appear, and failure to respond to allegations.); State ex rel. Oklahoma Bar Ass'n v. McCoy, , (Two years and one day for retaining unearned fees, and continuing to represent clients when while incapacitated.); State ex rel. Oklahoma Bar Ass'n v. Gray, , (Lawyer who misappropriated fund and obtained loan from client disbarred.); State ex rel. Oklahoma Bar Ass'n v. Perkins, , (Lawyer failed to maintain trust account, and utilized client's funds for personal benefit disbarred.).
 State ex rel. Oklahoma Bar Ass'n v. Bolton, see note 18, supra at ¶15; State ex rel. Oklahoma Bar Ass'n v. Donnelly, see note 18, supra; State ex rel. Oklahoma Bar Ass'n v. Colston, see note 18, supra; State ex rel. Oklahoma Bar Ass'n v. Moss, , ¶12, .
 State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra; State ex rel. Oklahoma Bar Ass'n v. Farrant, see note 16, supra; Tweedy v. Oklahoma Bar Ass'n, see note 12, supra.
 State ex rel. Oklahoma Bar Ass'n v. Raskin, , ¶22 .